**McDONNELL DOUGLAS CORPORATION, Appellee,**

v.

**COMMODORE BUSINESS MACHINES INC. and Commodore Business Machines (Canada) Limited, Appellants.**

**No. 79–4616.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1981.

Decided Aug. 31, 1981.

_____

John W. Clark, Trepel & Clark, San Jose, Cal., for appellants.

Theodore Dunn, Huntington Beach, Cal., for appellee.

Before GOODWIN and POOLE, Circuit Judges, and WYATT,[*] District Judge.

POOLE, Circuit Judge:

Commodore Business Machines (Commodore) appeals the judgment of the United States District Court for the Northern District of California, awarding plaintiff McDonnell Douglas the full $432,000 claimed in its breach of contract action, and denying Commodore's claim for a set off in the amount of $261,000. Commodore does not contest its liability for the balance of the debt.

The dispute arose out of a contract between subsidiaries of the two parties. McDonnell Douglas' subsidiary, Nitron, supplied Commodore with semiconductors for use in electric calculators. The product supplied by Nitron was a wafer containing a number of individual chips. When Commodore received the wafers it sent them to Electronic Arrays, a subcontractor, where the wafers were tested and diced and the individual chips were packaged. The $261,000 at issue is the value of the approximately 319,000 chips that were rejected as defective during the Electronic Arrays packaging process from February, 1975 through June, 1976.

Commodore introduced evidence that several months after the chips were rejected in its testing process, Commodore presented a debit memorandum for their value to Nitron. Commodore's then president testified that Nitron's executives requested that Commodore withdraw the memorandum because its adverse effect on Nitron's profit reports would likely induce McDonnell Douglas to cause Nitron to retire from the production of chips. Commodore had an interest in Nitron's continued participation in this industry because Nitron was its only supplier. For this reason, Commodore agreed to withdraw the memorandum. There was apparently some discussion about reconsidering the memorandum when Nitron was in better financial condition. However, Commodore does not contend that any representative of Nitron ever expressly stated that Commodore was entitled to any specific amount of credit. The matter appears to have been left for later agreement. Commodore contends that Nitron's failure to object at this time to the amount of the credit claimed constituted some sort of assent to liability in that amount. McDonnell Douglas later sold Nitron and disavowed any credit to Commodore for defective chips.

Pursuant to the parties' stipulation waiving the right to trial by the court and consenting to trial before a magistrate, the case was referred to U.S. Magistrate Frederick J. Woelflen. At trial, Commodore based its claim for a set off to its contract liability on two theories: (1) that the goods rejected during the testing by Electronic Arrays were defective and therefore in

* Honorable Inzer B. Wyatt, Senior United States District Judge for the District of New York, sitting by designation.

breach of the contract warranty; and (2) that representatives of the parties agreed that Commodore would be entitled to set off $261,000 against sums due for future deliveries.

The magistrate issued his first report on April 19, 1979. He found that the rejected dice had latent process defects, as required to trigger the warranty clause, and hence were in breach of the contract. He concluded that Commodore was liable to McDonnell Douglas in the amount of $432,-000, subject to a set off in the amount of $261,000.

McDonnell Douglas brought objections to this conclusion before the district court. Without further hearing and without stating any reasons beyond "good cause," that court remanded the case to the magistrate for revised findings and conclusions.

In his second report, the magistrate revised his earlier conclusion, holding (1) that Commodore had presented no evidence that Nitron had admitted that Commodore was entitled to a $261,000 credit, and (2) that Commodore had not satisfied its burden of proof as to the amount of the set off it claimed because there was no evidence showing that all of the rejected dice were latently defective. He therefore ruled that Commodore was liable for the full amount due under the contract, without set off.

Commodore brought objections to the district court, and that court issued its own opinion in this case. Regarding the breach of warranty theory, the district court determined that Commodore had failed to make an effective rejection of the dice because several months elapsed between their delivery and presentation of the credit memorandum. Under the UCC, therefore, Commodore bore the burden of proof as to whether there had been a breach of warranty, and had failed to carry that burden. The only evidence supporting Commodore's position was the list of rejects from the Electronic Arrays testing, but testimony showed that those defects could have accrued after production. There was no evidence establishing which, if any, of the rejected dice suffered from latent process defects. On Commodore's second theory, the court again reviewed the evidence, which very clearly showed that no agreement was ever reached as to the amount of credit, if any, to which Commodore was entitled. In view of these findings, the court entered judgment against Commodore for the full $432,000. It is from this judgment that the present appeal is taken.

## I

Commodore argues that the parties' stipulation waiving trial to the district court and consenting to trial by a United States magistrate had the effect of depriving the district court of the power to review the findings and recommendations of the magistrate. This theory must be rejected. In the first place, we seriously doubt that the form stipulation signed by the parties [1] could reasonably be read as intending the extraordinary effect of ousting the district court of its power to review the magistrate's report. See also N.D.Cal.Loc.R. 405(k) and 410–2(b).

More importantly, however, Commodore's claim is defective because it ascribes to the magistrate powers that he simply did not have when the judgment appealed from was entered. In 1976, Congress amended the Federal Magistrate Act, 28 U.S.C. § 631 *et seq.* Sections 636(a) and (b) described the powers of magistrates.[2] Neither of

1. The stipulation form provided by the Northern District of California read as follows:

   The undersigned counsel being fully aware of the right to trial of the captioned proceeding before a Judge of the United States District Court for this District, and in behalf of their clients, do hereby specifically waive trial be-fore the District Judge and consent to jury— court _xx_ trial before United States Magistrate Frederick J. Woelflen.

2. The relevant portions of the statute after the 1976 amendments were:

   § 636. Jurisdiction, powers, and temporary assignment.

these sections empowers magistrates to enter final judgments:

> In passing the 1976 amendments to the Federal Magistrates Act, Congress was alert to Art. III values concerning the vesting of decisionmaking power in magistrates. Accordingly, Congress made clear that the district court has plenary discretion whether to authorize a magistrate to hold an evidentiary hearing and that the magistrate acts subsidiary to and only in aid of the district court. Thereafter, the entire process takes place under the district court's total control and jurisdiction.

*United States v. Raddatz*, 447 U.S. 667, 681, 100 S.Ct. 2406, 2415, 65 L.Ed.2d 424 (1980) (footnotes omitted). *See also Mathews v. Weber*, 423 U.S. 261, 269–72, 96 S.Ct. 549, 553–55, 46 L.Ed.2d 483 (1976) ("A district judge would retain ultimate responsibility for decisionmaking in every instance in which a magistrate might exercise additional duties jurisdiction.")

■ Thus, it is quite clear that any action taken by the magistrate was taken subject to the "inherent supervisory power of the district judge." *Harding v. Kurco, Inc.*, 603 F.2d 813, 814 (10th Cir.1979). In reviewing the magistrate's report, the district judge did no more nor less than fulfill his statutory and Constitutional responsibilities. And no agreement between the parties could have altered this state of affairs: the parties could not, by consent, invest greater powers in the magistrate than Congress had seen fit to vouchsafe him. *See Taylor v. Oxford*, 575 F.2d 152, 154–55 (7th Cir.1978).

> (a) Each United States magistrate serving under this chapter shall have within the territorial jurisdiction prescribed by his appointment—
>
> (1) all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts;
>
> (2) the power to administer oaths and affirmations, impose conditions of release under section 3146 of title 18, and take acknowledgments, affidavits, and depositions; and
>
> (3) the power to conduct trials under section 3401, title 18, United States Code, in conformity with and subject to the limitations of that section.
>
> (b)(1) Notwithstanding any provision of law to the contrary—
>
> (A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.
>
> (B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.
>
> (C) the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.
>
> Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.
>
> (3) A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.

An October 10, 1979 amendment to this Act provides that upon consent of the parties and special designation by the district court, a magistrate may enter a civil judgment that is appealable directly to the United States Court of Appeals. 28 U.S.C. § 636(c), *as amended by* Act of Oct. 10, 1979, Pub. L. No. 96–82, 93 Stat. 643. This amendment was enacted after the judgment here on appeal had been entered in the district court, and therefore has no bearing on this case.

## II

Commodore also contends that the district court's review of the magistrate's first report was defective because it was required to but did not hear all of the evidence itself before acting on the case. This argument is based on *United States v. Bergera*, 512 F.2d 391 (9th Cir.1975), in which the court held that protection of the integrity of the fact finding process requires that, before the district court may enter a judgment that disregards the recommendation of a magistrate who has heard all of the evidence, the district court must itself rehear all of that evidence. *Id.* at 393–94.

 Commodore maintains that *Bergera* governs this case because remand is tantamount to reversal. We cannot agree. The district court did not substitute its judgment for that of the magistrate on questions of witness credibility and weight of the evidence, and it did not adopt findings that differed from those presented by the magistrate. Rather, when it determined that the first report was deficient in some undisclosed respect, it called upon the magistrate who had heard the evidence to reconsider his conclusions. The integrity of the fact finding process was in no way implicated in this proceeding; indeed, the district court followed a course of action well calculated to protect it. It would be a most inefficient practice to compel a district court to hear all of the evidence itself before remanding to the magistrate, and we decline to mandate such a practice.

## III

Finally, Commodore argues that the district court's review of the magistrate's first report was deficient because it applied an incorrect standard of review. Relying on Fed.R.Civ.P. 52(a), Commodore contends that the district court could not overturn the magistrate's original findings of fact unless they were clearly erroneous. This argument is without merit for reasons given above: the district court did not overturn the magistrate's findings of fact when it remanded the case for reconsideration.

In any case, Fed.R.Civ.P. 52(a) does not state the standard of review that a district court must apply when it considers a magistrate's findings and recommendations. That standard is provided in the Magistrates Act, 28 U.S.C. § 636(b). Although the statute calls for application of the clearly erroneous standard when a district court reviews the magistrate's report on certain pretrial, nondispositive motions, in all other cases, the statute grants the broadest possible discretion to the reviewing district court. When either party objects to any portion of the magistrate's report, the district court is charged to make a de novo determination of that portion. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b). There can be no doubt whatsoever that the district court in this case acted well within the mandate of this statute when it remanded the case for further consideration by the magistrate.

Commodore thus has presented no meritorious arguments for reversal of the judgment entered in this case. Accordingly, that judgment is AFFIRMED.