# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 24, 2024

Lyle W. Cayce
Clerk

———————

No. 20-61134

———————

Alex Francois,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

———————————————————

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A213 071 387

———————————————————

Before Stewart, Dennis, and Wilson, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

Petitioner Alex Francois appeals the Board of Immigration Appeals (BIA)'s decision dismissing his appeal of the Immigration Judge (IJ)'s order denying withholding of removal and protection under the Convention Against Torture (CAT). Because the BIA also dismissed Francois's motion to reconsider, he further petitions for review of the BIA's denial of his motion to reconsider its dismissal order. We hold that the BIA deprived Francois of due process in its September 18, 2019, decision by violating its own regulations. Accordingly, we GRANT both of Francois's petitions for

review, VACATE the BIA's orders, and REMAND for the BIA to review the IJ's April 22, 2019, order under the proper standards of review.

I

In 1979, Francois left Haiti for the United States without valid documentation to reunite with his U.S. citizen father. Now in his mid-sixties, Francois has lived and worked in New York City for much of his life and raised six U.S. citizen children—two of whom are military veterans. Francois suffers from severe mental illness, including schizophrenia, psychotic disorder, and bipolar disorder. His symptoms include psychosis, delusions, engaging in self-talk, laughing to himself, and "bizarre" behavior, such as drinking his own urine and eating grass.

Since 2011, Francois has been hospitalized for mental health treatment at least five times. Francois has also had several encounters with law enforcement, although at least twice he was found incompetent to stand trial, and many offenses were dismissed or traceable to his mental illness. Most recently, in July 2017, Francois was arrested for trespassing in Bell County, Texas. After Francois was found incompetent to stand trial in October 2017, he was admitted to Austin State Hospital for three months to undergo intensive psychiatric treatment.

In January 2018, Francois was transferred to the custody of U.S. Immigration and Customs Enforcement. Then, the Department of Homeland Security served Francois with a Notice to Appear (NTA), charging him with removability under 8 U.S.C. § 1182(a)(6)(A)(i). In July 2018, Francois appeared *pro se* before an IJ and admitted to the factual allegations in the NTA and conceded that he was removable as charged. Francois later obtained counsel, and through his attorney, requested a competency hearing. The IJ held a hearing and found Francois to be mentally incompetent. Francois subsequently filed his I-589 application for asylum,

withholding of removal, and protection under the CAT. Francois sought asylum or withholding of removal based on his membership in a particular social group (PSG). He identified his PSG as "Haitian nationals with chronic, serious mental illness who exhibit perceptible symptoms of mental illness that will require ongoing psychiatric treatment."

In support of his application, Francois attached (1) his expert's report and (2) country conditions evidence. *First*, the forty-eight-page expert report recounted the dire conditions criminal deportees with mental illness face in Haiti, based on both the accounts in other sources and the expert's eleven years of experience working with criminal deportees in Haitian prisons. The expert stated that Haitian society and authorities do not understand mental illness well and continue to think it is related to witchcraft and contagion. She explained that people in Haitian society see persons with mental illness as a discrete group known as *moun fou* in Haitian creole, roughly meaning "crazy people." In Haitian society, *moun fou* implies a certain danger, and Haitian authorities often respond violently to *moun fou* behavior. Police and prison officers use repressive measures to contain detainees with mental health disorders, particularly criminal deportees, sometimes locking them in crawlspaces, utility closets, or other tiny spaces or using physical violence or torture against them. Based on these conditions, the expert opined that Francois will inevitably exhibit symptoms consistent with *moun fou*, and police and prison officials will then likely violently target him, over and above the usual harsh treatment of ordinary Haitian criminal deportees. The expert further concluded that if Francois is deported to Haiti, prison and government officials will more likely than not subject him to severe physical and mental pain and suffering amounting to torture or persecution. *Second*, Francois's country conditions evidence recounted the lack of mental health treatment in Haiti and the abysmal conditions of its hospitals and prisons, largely due to inadequate resources and funding.

No. 20-61134

The IJ held an individual hearing on the merits of Francois's I-589 application and, on April 22, 2019, issued a decision denying Francois's request for asylum as a matter of discretion, granting his request for withholding of removal, and denying Francois's CAT claim as moot. Affording "great evidentiary weight" to the expert report, the IJ concluded that Francois, because of his mental illness and PSG membership, would likely be abused rising to the level of persecution. "Accordingly, the [IJ] f[ound] that [Francois] . . . made a sufficient showing that he is more likely than not to be persecuted on account of a protected ground in Haiti."

The Government appealed the grant of withholding of removal to the BIA, and on September 18, 2019, the BIA issued a decision *sua sponte* remanding to the IJ for further factfinding. Specifically, the BIA remanded for the IJ to "specify whether the respondent will be singled out individually for persecution and whether there is a pattern or practice of persecution of similarly situated individuals on account of a protected ground." It further instructed: "If the respondent will be singled out for persecution, the Immigration Judge should make specific factual findings regarding any harm the respondent is likely to suffer in Haiti and whether such harm would be on account of his membership in his proposed particular social group."

On remand, neither party submitted additional evidence or argument, and the parties agreed the only issue was whether Francois is entitled to withholding of removal or CAT protection. On December 23, 2019, the IJ issued a new decision denying Francois's claims. As to withholding of removal, the IJ reversed course from its previous opinion and found Francois had not proved he would be "targeted or singled out for persecution" in Haiti based on his mental illness. As to Francois's CAT claim, the IJ found Francois had failed to prove that Haiti maintained an underfunded prison and mental health system "with the specific intent to inflict torture" on criminal deportees or individuals suffering from mental illness. Alternatively, the IJ

4

found that Francois failed to show it was more likely than not that he would be tortured in Haiti because the expert evidence spoke only to the "various possibilities of what might happen to [Francois] in the future." Francois appealed the IJ's new decision to the BIA. The BIA dismissed the appeal on November 9, 2020, finding no clear error in the IJ's findings.

Francois filed a timely petition for review. After filing his petition for review, Francois moved this court for a stay of removal. This court denied the motion. He then sought an emergency stay from the Supreme Court, which was denied. *Francois v. Wilkinson*, 141 S. Ct. 652 (2021). Francois also filed an unsuccessful motion to reconsider in the BIA. Francois filed a timely second petition for review.

## II

We review the BIA's decision and consider the IJ's decision only to the extent it influenced the BIA. *Singh v. Sessions*, 880 F.3d 220, 224 (5th Cir. 2018). Questions of law and constitutional claims are reviewed de novo. *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001).

## III

Francois argues that the BIA deprived him of due process in remanding for further factfinding during its September 18, 2019, initial review of the IJ's April 22, 2019, order, which had granted him withholding of removal. Specifically, he argues that the BIA ducked its clear error standard of review by remanding to the IJ for factual findings that the IJ had already made—in violation of BIA regulations. The Government does not respond to the merits of Francois's due process argument.[1] Instead, the

---

[1] *See Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal.").

No. 20-61134

Government urges that we lack jurisdiction to review Francois's challenge because he failed to file a motion to reconsider raising his objection to the remand before the BIA (i.e., that the argument is unexhausted).

Beginning with the exhaustion issue, "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). Francois exhausted his argument that the BIA sidestepped the clear error standard of review in its September 18, 2019, decision. First, contrary to the Government's argument, Francois was not required to seek reconsideration to specifically object to the remand because the error arose in the BIA's decision. *Carreon v. Garland*, 71 F.4th 247, 252 (5th Cir. 2023) ("[A]n alien need not file a motion for reconsideration to exhaust arguments that arise as the result of a BIA opinion."); *see also Santos-Zacaria v. Garland*, 598 U.S. 411, 429 n.9 (2023) (specifically noting the petitioner was not required to file a motion to reconsider to "object[] that the B[IA] conducted impermissible factfinding," an issue that "arose in the B[IA]'s decision"). And second, in his brief before the BIA during the 2019 appeal, Francois exhausted his argument by stating "the [IJ] made a series of concrete, specific, and detailed factual findings, supported by an extensive uncontroverted evidentiary record" and that "[t]hese are findings of fact regarding the likelihood of future events, and thus must be reviewed for clear error." This is a concrete statement that is tied to his argument here on appeal. *Omari v. Holder*, 562 F.3d 314, 322 (5th Cir. 2009), *abrogated on other grounds by Santos-Zacaria*, 598 U.S. at 411 (holding that, in order to exhaust issues below, a petitioner must have "made some concrete statement before the BIA to which [he] could reasonably tie [his] claims before this court").

\*      \*      \*

No. 20-61134

Turning to the merits of his argument, Francois has shown the BIA deprived him of due process by violating its own regulations. "It is clearly established that the Fifth Amendment of the United States Constitution entitles aliens to due process of law in deportation proceedings." *Anwar v. I.N.S.*, 116 F.3d 140, 144 (5th Cir. 2002) (citation omitted). "Failure to adhere to regulations can constitute a denial of due process of law." *Arzanipour v. I.N.S.*, 866 F.2d 743, 746 (5th Cir. 1989) (first citing *Accardi v. Shaughnessy*, 347 U.S. 260 (1954); and then citing *Bridges v. Wixon*, 326 U.S. 135 (1945)); *see also Hussam F. v. Sessions*, 897 F.3d 707, 721 (6th Cir. 2018) (citing *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006)) (noting a due process violation occurs when the BIA applies the incorrect standard of review).

The relevant regulations provide: "The Board will not engage in de novo review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(i). "If further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge," *id.* § 1003.1(d)(3)(iv), which the BIA has interpreted to allow for *sua sponte* remands. *In re S- H-*, 23 I. & N. Dec. 462, 465 (BIA 2002).[2]

---

[2] This is the version of the regulation as it existed in 2019. The regulations have since been amended. The current regulations provide that the BIA generally "shall not *sua sponte* remand a case for further factfinding unless the factfinding is necessary to determine whether the immigration judge had jurisdiction over the case." 8 C.F.R. § 1003.1(d)(3)(iv)(C). But the regulations provide several exceptions, such as when "[t]he immigration judge's factual findings were not clearly erroneous, but the immigration judge committed an error of law that requires additional factfinding on remand." *Id.* § 1003.1(d)(3)(iv)(D)(5)(ii).

7

Although the BIA stated it was reviewing the IJ's findings for clear error and issues of law de novo, we must review what the BIA actually did because "the BIA is not entitled to state the correct legal standard but actually apply an incorrect standard." *Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 235 (5th Cir. 2009) (citations omitted). The BIA first found "no clear error in the Immigration Judge's finding that upon return to Haiti, [Francois] will be detained by Haitian authorities as a criminal deportee and will not receive the necessary treatment for his mental illness," but it stated "[l]ack of access to mental health treatment alone, however, does not constitute persecution on account of a protected ground." The BIA also found the IJ "did not clearly err in finding that the conditions in Haitian prisons are deplorable and that extreme repressive measures are used against the inmates and detainees," but it stated there were no findings as to the "specific harm [Francois] is likely to suffer while detained" or "whether the respondent's alleged persecutors would be motivated to harm him because of his mental illness." The BIA then remanded for the IJ to "specify whether the respondent will be singled out individually for persecution and whether there is a pattern or practice of persecution of similarly situated individuals on account of a protected ground." "If the respondent will be singled out for persecution, the Immigration Judge should make specific factual findings regarding any harm the respondent is likely to suffer in Haiti and whether such harm would be on account of his membership in his proposed particular social group."

But the IJ had already made these exact findings in its April 22, 2019, order. While the IJ noted the "deplorable prison conditions" in Haiti, that was not his only finding; the IJ also found that Haitian authorities target the mentally ill with further harm. The IJ found those known as "*moun fou* individuals or 'crazy people' . . . are frequently harmed by the police or private actors in Haiti on account of their mental illnesses." The IJ specified

that these harms went beyond the general "abysmal prison conditions" to include "extreme repressive measures such as physical punishment, torture[,] and isolation." Applying these findings to Francois individually, the IJ "f[ound] that [Francois] is more likely than not to be institutionalized in a government-run prison or psychiatric facility where he would be subject abuse and mistreatment amounting to persecution." The IJ found that, "given the lack of adequate mental health services in Haiti, it is very likely that [Francois's] mental health will further deteriorate if he is returned to Haiti," and "[c]onsidering that [Francois]'s mental illness likely contributed to the erratic behavior leading to many of his arrests, the [IJ] f[ound] that [Francois]'s mental illness, if left unchecked, will more likely than not cause him to engage in similar behavior in Haiti and attract the attention of Haitian authorities or private actors who will persecute him on account of his PSG membership," specifically by targeting him with the repressive measures noted above. Further, the IJ found "[t]he Haitian government is unwilling or unable to control the abuses that occur at government-run prisons or psychiatric facilities." As such, the IJ concluded that Francois would likely be abused because of his mental illness and PSG membership, rising to the level of persecution.

These excerpts already answered every question the BIA remanded for the IJ to address. No "further factfinding [wa]s needed" to justify a remand under the regulations. 8 C.F.R. § 1003.1(d)(3)(iv). Rather than reviewing the IJ's findings for clear error as required, the BIA shirked its duty by ignoring the IJ's relevant findings, in violation of 8 C.F.R. § 1003.1(d)(3)(i) and (iv).

Still, because the BIA's standard of review is not compelled by the Constitution or statute, but just by regulation, Francois must show substantial prejudice to state a due process violation. *Anwar*, 116 F.3d at 144 (citations omitted). "Proving substantial prejudice requires an alien to make

a prima facie showing that the alleged violation affected the outcome of the proceedings." *Okpala v. Whitaker*, 908 F.3d 965, 971 (5th Cir. 2018) (citations omitted). Ours is an easy case: the BIA's decision resulted in the IJ reversing course and denying relief, which shows the violation affected the outcome of the proceedings. Francois has shown a denial of due process on account of the BIA sidestepping its clear error review. The appropriate remedy is vacatur and remand for the BIA to consider the IJ's initial April 22, 2019, order under the correct standards of review. *See, e.g.*, *Gonzales*, 447 F.3d at 944; *Morales-Morales v. Barr*, 933 F.3d 456, 467 (5th Cir. 2019).

## IV

For the foregoing reasons, we GRANT the petitions for review, VACATE the BIA's orders, and REMAND for the BIA to review the IJ's initial April 22, 2019, order under the proper standards of review.